RUFFIN, C. J., dissenting.
The case agreed is in the words and figures following, to wit:
The following facts are agreed upon by the parties. One Fleming was committed in due course of law as a debtor in execution, at the instance of Boaz Adams, to the custody of James C. Turrentine, as sheriff of Orange, and he delivered the said Fleming to the plaintiff Faucett, the jailer of said county, 26 November, 1839, and he remained in close prison until the night of 1 November, 1844, when he made his escape by his own act, assisted by some one from the outside of the prison, by cutting through the iron bars of the window, but without the knowledge or consent or actual negligence of the plaintiff. In order to provide for the legal charges and expenses of the jailer for keeping or maintaining the said Fleming as a prisoner under the said commitment after the first twenty days, an obligation, a copy of which marked A is hereunto annexed, was taken by the plaintiff from the said Boaz Adams. Said Fleming filed his petition for a discharge under the act of 1798, which was heard in prison on 20 December, 1839, and the prayer of the petition was refused, and he was adjudged to remain in prison. *Page 164 
The judgment of the said Boaz Adams against Fleming, under which he was committed as aforesaid, was obtained at May Term, 1839, of Orange County Court. It is further agreed that the negroes and (236) other property of Fleming aforesaid were then sufficient to pay off the plaintiff. Said judgment was carried to the Western District of Tennessee in the fall of 1838, or as early as 1 March, 1839, and taken from thence to Texas, in the fall of 1839; that the said negroes were in the possession of Fleming's children, as divided amongst them last year (June, 1850) by commissioners appointed for that purpose. A judgment was obtained by the plaintiff against Fleming at May Term, 1844, of Orange County Court, for $519.60, being the prison fees due up to the issuing of the writ in that case, and execution of fi. fa. issued thereon to the county of said Fleming's residence, and was returned, "No property to be found," Faucett's account in jail till the escape. He acted as jailer. In the present case a verdict has been rendered for the plaintiff, subject to the opinion of the court upon the facts above stated. If the court should be of opinion with the plaintiff, judgment is to be given in accordance with the verdict; if otherwise, judgment of nonsuit is to be entered.
The following is a copy of the bond referred to:
We promise to pay to Thomas Faucett, jailer, etc., all such prison fees and charges as he may by law be entitled to by reason of the imprisonment of Mordecai Fleming in the public jail of Orange at the instance of Boaz Adams.
In witness whereof, we have hereunto set our hands and seals, this 20 December, 1839.
 B. ADAMS. [SEAL] Test: JOHN A. GILMER. P. ADAMS. [SEAL]
By Revised Statutes, ch. 105, sec. 37, jailers are allowed for finding each prisoner food, etc., 30 cents per day. By ch. 38, sec. 6, "Whenever a debtor shall be actually confined within the walls of a prison, it shall be the duty of the jailer to furnish said prisoner (237) with necessary food during his confinement, should he require the same, and the jailer shall be authorized to demand the same fees therefor as are allowed by law for keeping other prisoners, and may, if theprisoner be unable to discharge them, recover the same from the party at whose instance such debtor was confined in jail. And when the debtor shall have remained in jail for the space of twenty days, it *Page 165 
shall be lawful and sufficient for the sheriff or jailer to give notice thereof, and to demand security of him for the prison fees that may arise after the expiration of twenty days; and if he shall fail to give such security, then to discharge such debtor out of custody."It was argued by Mr. Bryan with much force that, as the jailer is required to furnish food daily, and is allowed thirty cents per day by a proper construction of the statute, he has a right to require the creditor, who has given security for the prison fees, to pay up from day to day, or that, properly, the bond which he gives should be on condition to pay the prison fees at such times as the parties may agree on, say, at the end of each week or month or six months; for it is unreasonable that there should be no right to require payment until the expiration of the imprisonment, as that might last for many years, even until the death of the prisoner, during which time many jailers have gone out of office, and certainly, whoever was jailer would find it inconvenient to advance money out of his own pocket in discharge of a duty required of him by law, if the time of repayment was indefinite. We are inclined to adopt this construction, but will not do so, definitely, as we prefer to put the decision on another point. Against it is said, by giving the security the defendant concluded the question as to the debtor's ability to pay the prison fees, for he was not bound to do so except upon the supposition of the debtor's inability; and after acting upon that supposition, whereby he took from the jailer the right to discharge the debtor out of custody, and in that way relieving himself from the burden of his support, it (238) is not consistent with fair dealing afterwards to turn round and say, "He was able to pay the prison fees, and I will not be bound by my obligation"; because, if he intended to make that issue, he ought to have done so, whereby he, refusing to give the bond, the jailer could have discharged the debtor "by taking the responsibility." There is some force in this view of the question, also, but we pass it by.
What is the meaning of the words, "if the person is unable to discharge the prison fees"? We think the true construction is, if he has no property or friends within the State out of which the money can be collected by any process which our courts of law or of equity have power to issue. But in the present case the debtor had no property or friends within this State
out of which he could have raised the amount, even if he had been disposed so to do.
It is true, there were certain slaves which the debtor had caused to be run off to Texas, and possibly the plaintiff, by instituting proper proceedings in Texas, might have been able to collect the amount of the prison fees. But it is certain it would have cost him ten times the amount, and it is also certain that to require a jailer to support a debtor at his *Page 166 
own expense, or to follow his property to Texas, California, or China, would be a most unreasonable imposition upon the public officer; and we think the Legislature never intended it. If the jailer cannot force him to pay by any process of any of our courts, because he has nothing within the jurisdiction of this State, then, in the language of the statute, he is "unable to pay."
The question whether a jailer would forfeit his right to be paid his fees if he opened the door and let the prisoner walk out, is not presented by this case, for it is agreed there was no actual negligence on the part of the plaintiff.
Of this opinion was also NASH, J. RUFFIN, C. J., dissented.
PER CURIAM. Affirmed. *Page 167 
(241)